EXHIBIT A

FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
08/01/2022 04:05 PM
CV 2022 08 1319

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| JAMES COOPER<br>1626 Llanfair Avenue, No. 23<br>Cincinnati, OH 45224 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| PACIFIC MANUFACTURING OHIO, INC.<br>8955 Seward Road<br>Fairfield, OH 45011 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>PACIFIC MANUFACTURING OHIO,<br>INC.<br>c/o Taft Service Solutions Corp.<br>Statutory Agent<br>425 Walnut Street, Suite 1800<br>Cincinnati, OH 45202 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff, James Cooper, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Cooper is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant PACIFIC MANUFACTURING OHIO, INC., ("Pacific") is a for-profit corporation that conducts business within the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 8955 Seward Road, Fairfield, OH 45011.

3. Pacific is, and was at all times hereinafter mentioned, Cooper's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, the Family and

Medical Leave Act ("FMLA") 29 U.S.C. §2617 et seq., the Americans with Disability Act ("ADA") 42 U.S.C. §12101, and R.C. § 4112 et seq.

4. Within 300 days of the adverse employment actions described herein, Cooper filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-00113 ("EEOC Charge").

5. On or about May 19, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Cooper regarding the EEOC Charge.

6. Cooper received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

7. Cooper has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

8. Cooper has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

9. All of the material events alleged in this Complaint occurred in or around Butler County, Ohio.

10. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

11. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Cooper is a former employee of Pacific.

14. At all times noted herein, Cooper was qualified for his position at Pacific.

15. At all times noted herein, Cooper could fully perform the essential functions of his job, with or without a reasonable accommodation.

16. Cooper worked as a Crane Operator at Pacific from August 26, 2019, until Pacific unlawfully terminated Cooper's employment on or around May 18, 2021.

17. Cooper is African American and disabled, placing him in protected classes for race and disability status.

18. As a result of suffering from PTSD, multiple surgeries to his foot, and a limp, Cooper is and was considered disabled within the meaning of R.C. § 4112.01(A)(13) and the ADA.

19. Pacific had notice of Cooper's protected classes during his employment.

20. In the alternative, Pacific perceived Cooper as being disabled.

21. In the alternative, Pacific perceived that Cooper's medical condition constituted a physical impairment.

22. In the alternative, Pacific perceived Cooper's disability to substantially impair one or more of his major life activities, including working.

23. Despite this actual or perceived disabling condition, Cooper was still able to perform the essential functions of his job.

24. Around early 2020, Cooper's group leaders Greg LNU (Caucasian) and Mark Sturgell (Caucasian) had some issues.

25. Cooper had told Greg LNU and Sturgell that his girlfriend found a new job and he needed to take her to work at 6:00 pm.

26. Greg LNU and Sturgell approved the early departure, but Cooper let them know also that he did not have enough banked PTO time.

27. Despite this, Sturgell and Greg LNU told Cooper to do what he had to do.

28. Greg LNU and Sturgell then wrote Cooper up for this the next day.

29. Similarly situated Caucasian, able-bodied employees were not disciplined for leaving early in emergency situations despite having no banked hours.

30. In or around Autumn 2020, after a visit to his doctor, Cooper learned that his left foot was deteriorating and would need another round of surgery soon.

31. Cooper reported this to Amir LNU (African American) and Henry LNU (Jamaican).

32. The ongoing COVID-19 pandemic delayed Cooper's surgery until 2021.

33. Despite his disability, Cooper continued to work diligently for Pacific.

34. Cooper's shift schedules were posted every Thursday.

35. In or around late 2020, on a Thursday, Cooper checked the schedule and saw that he was off that weekend.

36. Sturgell approached Cooper at the end of the shift to tell him he had to work on Friday, but Cooper responded that he was not on the schedule for the weekend shift.

37. Sturgell then turned to the board where the schedule was posted, scratched out another employee's name, and wrote Cooper's name instead.

38. Caucasian, able-bodied employees were not forcibly scheduled last minute to weekend shifts in this way.

39. Cooper refused to accept this treatment and reported it to human resources ("HR").

40. This was a protected complaint of discrimination.

41. HR then pointed Cooper to assistant manager Chase LNU (Caucasian), and Cooper reported it to him too.

42. This was another protected complaint of discrimination.

43. Later, in a meeting with Chase LNU, HR, and Sturgell, Cooper proved that Sturgell changed the schedule to replace Cooper discriminatorily.

44. Cooper did not have to work that weekend as a result, but no further action was taken against Sturgell.

45. Around early 2021, Cooper met with Pacific's staff nurse about his foot and discussed FMLA.

46. Cooper and his doctors provided the requisite documentation for intermittent leave and from January 12, 2021, through February 26, 2021, he had five separate appointments with his medical care providers.

47. On or around February 24, 2021, Cooper started continuous FMLA leave for surgery and returned on or around April 12, 2021.

48. On or around February 26, 2021, Sturgell gave Cooper a write-up citing his performance.

49. The temporal proximity of Cooper's FMLA use and the write up made it obvious that this write-up was in retaliation for his FMLA use.

50. Cooper realized that his body was under enormous stress, therefore, he met with his doctor again and received a work restriction for 90 days.

51. Specifically, Cooper was requesting reasonable accommodations limiting his shifts to less than 12-hours/day and not being on his feet for more than 10 straight minutes at a time.

52. These requested accommodations were reasonable and would not have posed any undue hardship on Pacific.

53. Cooper again provided the medical documentation to Pacific, but his accommodations were never followed.

54. Sturgell repeatedly tried to break the accommodations and force Cooper to work twelve-hour days.

55. The weekend of around May 15-16, 2021, Cooper was not scheduled to work.

56. That Monday, Cooper called off citing his intermittent FMLA.

57. On or around May 18, 2021, Cooper clocked in and was immediately called to a meeting with Chase LNU and Sturgell.

58. Chase LNU and Sturgell then terminated Cooper's employment citing a missed day of work on that Saturday, effective immediately.

59. Cooper responded he wasn't on the schedule for Saturday.

60. Chase LNU and Sturgell then shifted reasons and cited Cooper being out on that Monday, but Cooper responded he used FMLA.

61. Chase LNU and Sturgell then shifted reasons again and said that Cooper called the wrong person to call the day off – despite this being the same person Cooper contacted throughout his employment.

62. These shifting reasons for termination show Pacific's pretextual reason for terminating Cooper's employment.

63. To the extent Cooper had missed work, such absences should have been covered by FMLA leave because they were connected to Cooper's serious health condition.

64. The above facts demonstrate that Defendants engaged in a pattern and practice of race and disability discrimination and FMLA retaliation.

65. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

66. There was a causal connection between Cooper's race and disability and Defendants' termination of Cooper.

67. There was a causal connection between Cooper's use of FMLA and Defendants' termination of Cooper.

68. As a result of Pacific's acts and omissions, Cooper has suffered, and will continue to suffer, damages.

## COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA

69. Cooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. Cooper suffers from PTSD, multiple surgeries to his leg, and a limp.

71. Cooper is disabled.

72. In the alternative, Pacific perceived Cooper as being disabled.

73. Cooper's condition constituted a physical impairment.

74. Cooper's condition substantially impaired one or more of his major life activities including working.

75. Pacific perceived Cooper's condition to substantially impair one or more of his major life activities including working.

76. Pacific treated Cooper differently than other similarly-situated employees based on his disabling condition.

77. Pacific treated Cooper differently than other similarly-situated employees based on his perceived disabling condition.

78. On or about May 18, 2021, Defendant terminated Cooper's employment without just cause.

79. Alternatively, Defendant's cited reason for Cooper's termination was pretext.

80. Defendant terminated Cooper's employment based his disability.

81. Defendant terminated Cooper's employment based his perceived disability.

7

82. Defendant violated the ADA when it discharged Cooper based on his disability.

83. Defendant violated the ADA when it discharged Cooper based on his perceived disability.

84. Pacific violated the ADA by discriminating against Cooper based on his disabling condition.

85. Pacific violated the ADA by discriminating against Cooper based on his perceived disabling condition.

86. Cooper suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to the ADA.

87. As a direct and proximate result of Defendant's conduct, Cooper suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION UNDER R.C. § 4112 et. seq.

88. Cooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. Cooper suffers from PTSD, multiple surgeries to his leg, and a limp.

90. Cooper is disabled.

91. In the alternative, Pacific perceived Cooper as being disabled.

92. Cooper's condition constituted a physical impairment.

93. Cooper's condition substantially impaired one or more of his major life activities including working.

94. Pacific perceived Cooper's condition to substantially impair one or more of his major life activities including working.

95. Pacific treated Cooper differently than other similarly-situated employees based on his disabling condition.

96. Pacific treated Cooper differently than other similarly-situated employees based on his perceived disabling condition.

97. On or about May 18, 2021, Defendant terminated Cooper's employment without just cause.

98. Alternatively, Defendant's cited reason for Cooper's termination was pretext.

99. Defendant terminated Cooper's employment based his disability.

100. Defendant terminated Cooper's employment based his perceived disability.

101. Defendant violated R.C. § 4112 when it discharged Cooper based on his disability.

102. Defendant violated R.C. § 4112 when it discharged Cooper based on his perceived disability.

103. Pacific violated R.C. § 4112 by discriminating against Cooper based on his disabling condition.

104. Pacific violated R.C. § 4112 by discriminating against Cooper based on his perceived disabling condition.

105. Cooper suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

106. As a direct and proximate result of Defendant's conduct, Cooper suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: FAILURE TO ACCOMMODATE UNDER THE ADA

132. Cooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Cooper informed Pacific of his disabling condition.

134. Cooper requested accommodations from Pacific to assist with his disabilities including work restrictions from his doctor for 90 days.

135. Cooper's requested accommodations were reasonable.

9

136. There was an accommodation available that would have been effective and would have not posed an undue hardship to Pacific.

137. Pacific failed to engage in the interactive process of determining whether Cooper needed an accommodation.

138. Pacific failed to provide an accommodation.

139. Pacific violated the ADA.

140. As a direct and proximate result of Pacific's conduct, Cooper suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT IV: FAILURE TO ACCOMMODATE UNDER R.C. 4112 et seq.**

141. Cooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Cooper informed Defendants of his disabling condition.

143. Cooper requested accommodations from Pacific to assist with his disabilities including work restrictions from his doctor for 90 days.

144. Cooper's requested accommodations were reasonable.

145. There was an accommodation available that would have been effective and would have not posed an undue hardship to Pacific.

146. Defendants failed to engage in the interactive process of determining whether Cooper needed an accommodation.

147. Defendants failed to provide an accommodation.

148. Defendants violated R.C. § 4112.02 by failing to provide Cooper a reasonable accommodation.

149. Cooper suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of Defendants' conduct, Cooper suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT V: RACE DISCRIMINATION UNDER TITLE VII**

107. Cooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Throughout his employment, Cooper was fully competent to perform his essential job duties.

109. Greg LNU, Sturgell, and Chase LNU treated Cooper differently than other similarly situated employees based on his race.

110. Greg LNU, Sturgell, and Chase LNU violated Title VII by discriminating against Cooper due to his race.

111. On or about May 18, 2021, Pacific terminated Cooper without just cause.

112. Alternatively, Defendant's cited reason for Cooper's termination was pretext.

113. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

114. Defendant terminated Cooper based on his race.

115. Defendant violated Title VII when it terminated Cooper based on his race.

116. Cooper suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to Title VII.

117. As a direct and proximate result of Defendant's conduct, Cooper has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

11

## COUNT VI: RACE DISCRIMINATION UNDER R.C. § 4112 et seq.

118. Cooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

119. Throughout his employment, Cooper was fully competent to perform his essential job duties.

120. Greg LNU, Sturgell, and Chase LNU treated Cooper differently than other similarly situated employees based on his race.

121. Greg LNU, Sturgell, and Chase LNU violated R.C. § 4112.02(A) *et seq.* by discriminating against Cooper due to his race.

122. On or about May 18, 2021, Pacific terminated Cooper without just cause.

123. Alternatively, Defendant's cited reason for Cooper's termination was pretext.

124. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

125. Defendant terminated Cooper based on his race.

126. Defendant violated R.C. § 4112.01 et. seq. when it terminated Cooper based on his race.

127. Cooper suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

128. As a direct and proximate result of Defendant's conduct, Cooper has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: RETALIATORY DISCRIMINATION

129. Cooper restates each and every prior paragraph of this complaint, as if it were fully restated herein.

130. As a result of the Defendant's discriminatory conduct described above, Cooper complained about the race and disability discrimination he was experiencing.

131. Subsequent to Cooper's reporting of race and disability discrimination to HR and Chase LNU, Cooper's employment was terminated.

132. Defendant's actions were retaliatory in nature based on Cooper's opposition to the unlawful discriminatory conduct.

133. Pursuant to R.C. §4112.02(I), the ADA, and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

134. Cooper suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages

135. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Cooper, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VIII: RETALIATION IN VIOLATION OF THE FMLA

136. Cooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

137. During his employment, Cooper utilized FMLA leave.

138. After Cooper utilized his qualified FMLA leave, Defendants retaliated against him.

139. Defendants retaliated against Cooper by writing him up, and later, terminating his employment.

140. Defendants willfully retaliated against Cooper in violation of U.S.C. § 2615(a).

141. As a direct and proximate result of Defendants' wrongful conduct, Cooper is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

**DEMAND FOR RELIEF**

WHEREFORE, Cooper demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Cooper's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Cooper for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Cooper's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
    Trial Attorney
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff James Cooper*

## **JURY DEMAND**

Plaintiff James Cooper demands a trial by jury by the maximum number of jurors permitted.

/s/ Evan R. McFarland
Evan R. McFarland (0096953)
